IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cr-30088-SMY |
| | ) |
| GERMONDE BRUNNER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Defendant Germonde Brunner is charged by indictment with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and has pleaded not guilty (Docs. 1,9).[1] Now pending before the Court is Brunner's motion to dismiss the indictment, in which he argues that 18 U.S.C. § 922(g)(1) violates his Second Amendment rights (Doc. 27). The Government opposes the motion (Doc. 29). For the following reasons, Brunner's motion is **GRANTED**.

### Background

Brunner asserts that 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied to him and moves to dismiss the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). Pursuant to Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule

---

[1] Although the Indictment does not identify a qualifying felony conviction, Brunner's criminal record reflects felony convictions for Possession of a Stolen Firearm, Carjacking, and Use of a Firearm in During and Furtherance of a Crime of Violence (United States District Court for the Eastern District of Missouri, case number 17-CR-00042-SNLJ).

12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds.  *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that the indictment must be dismissed because the statute under which it is brought is unconstitutionally vague).  A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute.  *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).  The Court therefore analyzes Brunner's motion under Rule 12(b)(1).

Section 922(g)(1) makes it unlawful for any person "who has been convicted of . . . a crime punishable by imprisonment for a term exceeding one year" to "possess . . . any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).  The Second Amendment to the U.S. Constitution directs: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

Recently, in *New York States Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court struck down a New York law which required residents to demonstrate cause to obtain a license to carry a handgun outside the home.  Noting that certain firearm regulations remain constitutional, the Court provided an analytical framework for determining whether a particular firearm regulation violates the Second Amendment: Courts must first determine whether the "Second Amendment's plain text covers an individual's conduct." *Id*. at 2129–30.  If so, the Constitution presumptively protects that conduct, and the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2126.  If the government cannot meet this burden, then the

individual's firearm-related conduct falls within the Second Amendment's "unqualified command" and is protected. *Bruen*, 142 S. Ct. at 2126.

The Seventh Circuit has not decided the constitutionality of § 922(g)(1) since *Bruen* but has instructed district courts to conduct a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)." *Atkinson v. Garland*, 70 F.4th 1018, 1022-24 (7th Cir. 2023). The Court articulated a series of "interrelated and non-exhaustive questions" to "help focus the proper analysis…":

> 1. Does § 922(g)(1) address a 'general societal problem that has persisted since the 18th century?' ... If this problem existed during a relevant historical period, did earlier generations address it with similar or 'materially different means?';

> 2. What does history tell us about disarming those convicted of crimes generally and of felonies in particular? Among other sources, the parties could look to commentary from the Founders, proposals emerging from the states' constitutional ratifying conventions, any actual practices of disarming felons or criminals more generally around the time of the Founding, and treatment of felons outside of the gun context (to the extent this treatment is probative of the Founders' views of the Second Amendment). When considering historical regulations and practices, the key question is whether those regulations and practices are comparable in substance to the restriction imposed by § 922(g) (1). To answer the question, the district court and the parties should consider how the breadth, severity, and the underlying rationale of the historical examples stack up against § 922(g)(1);

> 3. Are there broader historical analogues to § 922(g)(1) during the periods that *Bruen* emphasized, including, but not limited to, laws disarming 'dangerous' groups other than felons? The parties should not stop at compiling lists of historical firearms regulations and practices. The proper inquiry, as we have explained, should focus on how the substance of the historical examples compares to § 922(g)(1);

> 4. If the district court's historical inquiry identifies analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support § 922(g)(1)? On this front, the parties should provide details about the enforcement, impact, or judicial scrutiny of these laws, to the extent possible;

> 5. If history supports Atkinson's call for individualized assessments or for a distinction between violent and non-violent felonies, how do we define a non-violent or a non-dangerous felony?  And what evidence can a court consider in assessing whether a particular felony conviction was violent?  For instance, can a court consider the felony conviction itself, the facts of the underlying crime, or sentencing enhancements?  *Bruen* shows that these distinctions should also have firm historical support.  *See* 142 S. Ct. at 2132–33 (explaining that the court must assess whether modern and historical regulations are 'relevantly similar,' including in terms of how and why the regulations burden gun rights)."

*Atkinson*, 70 F.4th at 1022-24.

The *Atkinson* Court recognized that "the historical analysis required by *Bruen* will be difficult and no doubt yield some measure of indeterminacy." *Id*. at 1024.  And predictably, a circuit split has developed on the issue.  *See United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (upholding the statute's constitutionality, as applied to a defendant convicted of state law felonies for selling controlled substances); *see also United States v. Dunn*, 76 F.4th 1062, 1068 (8th Cir. 2023) ("[f]ollowing [*Bruen*], this court concluded that the felon-in-possession statute is constitutional, and there is 'no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)' ") (quoting *Jackson*, 69 F.4th at 502); *but see Range v. Att'y Gen. United States of Am*., 69 F.4th 96, 98–99, 106 (3d Cir. 2023) (en banc) (finding that the government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support disarming a defendant convicted of the felony-equivalent state offense of making a false statement to obtain food stamps).

Courts in this district and throughout the circuit have also grappled with, and decided on various grounds, the constitutionality of § 922(g)(1) under *Bruen* – most, but not all upholding the statute as constitutional.  *See United States v. Ware*, No. 22-CR-30096, 2023 WL 3568606 (S.D. Ill. May 19, 2023) (McGlynn, S.) (finding felons are protected under plain text of the Second

Amendment and that Section 922(g)(1) is consistent with this Nation's regulation of firearms); *United States v. Sloat*, No. 22-CR-30017, 2023 WL 8455112 (S.D. Ill. Dec. 6, 2023) (Dugan, D.) (finding the Nation's historical tradition of firearm regulation, and even outright prohibition, against the use or possession of firearms by individuals perceived or deemed to be dangerous, untrustworthy, or criminal.); *United States v. Agee*, No. 1:21-CR-00350-1, 2023 WL 6443924 (N.D. Ill. Oct. 3, 2023) (Chang, J.) (finding felons are protected under plain text of the Second Amendment, that § 922(g)(1) is consistent with this Nation's regulation of firearms, and no historical evidence for as-applied challenge); *United States v. Johnson*, No. 23 CR 156, 2023 WL 6276562 (N.D. Ill. Sept. 26, 2023) (Kendall, J.) (finding felons are not protected under plain text of the Second Amendment); *United States v. Anderson*, No. 1:22-CR-0594, 2023 WL 7531169 (N.D. Ill., Nov. 13, 2023) (Gettleman, J.) (finding that Section 922(g)(1) is unconstitutional facially and as-applied to felons covered under Second Amendment's plain text and government could not establish historical tradition of firearm regulation); *United States v. Griffin*, No. 21-CR-00693, 2023 WL 8281564 (N.D. Ill., November 30, 2023) (Johnson Coleman, S.) (conducting an individualized assessment and finding the defendant's criminal record did not support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly, and that Section 922(g)(1) is unconstitutional as applied to him).

## **Discussion**

The *Bruen* analysis is aptly summarized as follows:

> The *Bruen* Court provides two avenues of historical inquiry. The first avenue of inquiry is a 'straightforward historical inquiry,' which applies when 'a challenged regulation addresses a general societal problem that has persisted since the 18th century.' *Id*. at 2131. Under this inquiry, courts must identify a 'distinctly similar historical regulation addressing that problem.' *Id*. The second avenue of inquiry is by 'analogy.' *Id*. at 2132. Because '[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or

> the Reconstruction generation in 1868,' there is not always straightforward correspondence, and unprecedented societal concerns or dramatic technological changes may require a 'more nuanced approach.' *Id*. Under these circumstances, the *Bruen* Court directed courts to consider 'historical analogies' to the challenged regulation to determine whether the regulation sufficiently resembles historically acceptable restrictions. *Id*.
>
> Evaluating whether a historical regulation is a proper analogue for a for a 'distinctly modern' firearm regulation requires a determination of whether the two regulations are 'relevantly similar.' *Id*. The *Bruen* Court directed lower courts to centrally consider 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.' *Id*. at 2133. The Court emphasized that 'analogical reasoning under the Second Amendment is neither a regulatory straitjacket nor a regulatory blank check.' *Id*. It requires a 'well-established and representative historical **analogue**, not a historical **twin**.' *Id*. (Emphasis in original).

*U.S. v. Anderson*, 2023 WL 7531169, at *2 (N.D. Ill. Nov. 13, 2023).

Noting that committing a felony results in the forfeiture of certain constitutional rights, including the right to vote, the right to hold office, and the right to serve on a federal jury, the Government maintains that § 922(g)(1) "accords with the historical meaning of the Second Amendment…". (Doc. 27 at p. 11). There is no dispute in this case that the straightforward historical inquiry does not apply as there were no laws categorically restricting individuals with felony convictions from possessing firearms at the time of the Founding or ratification of the Second or Fourteenth Amendments. The Government argues however that Defendant's motion should be denied under the analogy inquiry because the Second Amendment's plain text does not presumptively protect the right of felons to possess firearms, and even if it did, § 922(g)(1) remains constitutional as applied to all felons because it is consistent with the Nation's historical tradition of firearm regulation.

Referencing the *Heller* and *Bruen* Courts' repeated references to "law abiding" and "responsible citizens," the Government first argues that Brunner, as a convicted felon, is

excluded from "the people" as contemplated by the Second Amendment. Judicial opinions are not to be read like statutes and must be read holistically in "light of the subject under consideration." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). Prior to *Bruen*, the Seventh Circuit noted that "[w]hile some of *Heller*'s language does link Second Amendment rights with the notions of 'law-abiding citizens' and 'members of the political community,' those passages did not reflect an attempt to define the term 'people.'" (Internal citations omitted). *United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015). Moreover, is his concurrence in *Bruen*, Justice Alito specifically states that the decision "decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." *Bruen*, 142 S. Ct. at 2157.

This Court finds that the references cited by the Government are clearly dicta, which the Court is not bound to follow. *See Cole Energy Dev. Co. v. Ingersoll-Rand Co.,* 8 F.3d 607, 609 (7th Cir. 1993). It is evident that Brunner is included in "the people" covered by the Second Amendment, and that his conduct is presumptively protected. As such, the Court turns to consider whether § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation.

Under *Bruen*, when a "distinctly modern" regulation such as § 922(g)(1) is at issue, the government must offer historical regulation that is "relevantly similar." *Bruen*, 142 S. Ct. at 2132. The Court must then determine whether the proffered historical analogues "impose a comparable burden on the right of armed self-defense ***and*** whether that burden is comparably justified" as the burden imposed by § 922(g)(1). *Id*. at 2133 (emphasis added). As the *Bruen* Court clarified:

> … analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue, because

> doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Bruen,* 142 S. Ct. at 2133 (emphases in original).

Here, the Government asserts that two types of laws are proper historical analogues for § 922(g)(1): "(a) laws categorically disqualifying groups who were untrustworthy adherents to the law from possessing firearms; and (b) laws authorizing capital punishment and estate forfeiture for felonies" (Doc. 27, p. 16). The first category of laws cited by the Government involves Catholics in England who were disarmed for refusing to renounce their faith, Native Americans and enslaved Black people in Colonial America who were disarmed for not being "dependable adherents to the rule of law," and individuals who were disarmed for failing to take oaths of loyalty to the government during the Revolutionary War (Doc. 27, pp. 17-23). For the second category, the Government points to crimes that were punishable by death and forfeiture of estate in Colonial America.

Citing *Jackson* and *Range*, the Government contends "[w]hile some of these categorical prohibitions of course would be impermissible today under other constitutional provisions, they are relevant here in determining the historical understanding of the right to keep and bear arms." *Jackson*, 69 F.4th 503; *see also Range*, 69 F.4th at 122, n.50 (Krause, J., dissenting) (rejecting these "bigoted and unconstitutional laws" but citing them to demonstrate the "tradition of categorical, status-based disarmaments"). This Court disagrees. Laws reflecting the English tradition of categorically disarming religious, ethnic, and racial minorities are not relevantly similar and historically analogous to § 922(g)(1). These laws, justified solely on discriminatory

bases, would thankfully be prohibited today. As such, this Court finds that they cannot impose a "comparably justified" burden on the right of armed self-defense.

Conversely, the text, history, and tradition of laws disarming British loyalists, based upon conduct demonstrating that they could not be trusted to obey the law or posed a danger to the political community if armed – not upon their religion, race, or ethnicity – are arguably historically analogous. They are relevant to modern day justifications for the felon in possession statute. But this does not end the inquiry. "The inquiry required by *Bruen*… is not merely whether a dispossession statute's burden is "comparably justified," but also whether the statute imposes a "comparable burden" on the right itself. *Bruen*, 142 S. Ct. at 2133.

The Government has not met its burden to provide evidence of a dispossession law or regulation that imposes a burden comparable to § 922(g)(1). The loyalty oath laws, under which "untrustworthy" individuals were permitted to regain their right to possess firearms by swearing an oath of allegiance to the state or United States are not a "distinctly similar," or even "relevantly similar," historical analogue to § 922(g)(1)'s permanent prohibition on firearm possession by felons. 18 U.S.C. § 921(a)(20); *see also Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (examining certain "method[s] of restoring civil rights" under Illinois law after an individual's state sentence expired). Rather, by imposing lifetime dispossession and criminalization, § 922(g)(1) clearly imposes a significantly greater burden on a convicted felon's right to keep and bear arms.

The second category of laws referenced by the Government, laws that authorize capital punishment and estate forfeiture for certain felonies, fare no better. While the penalties were severe, they were imposed for criminal conduct; not for status crimes that arose from otherwise

lawful conduct by felons who had completed their sentences. As the Third Circuit recognized in *Range*:

> The greater does not necessarily include the lesser: founding-era governments' execution of some individuals convicted of certain offenses does not mean the State, then or now, could constitutionally strip a felon of his right to possess arms if he was not executed. As one of our dissenting colleagues notes, a felon could "repurchase arms" after successfully completing his sentence and reintegrating into society. Krause Dissent at 127-28. That aptly describes Range's situation. So the Government's attempt to disarm Range is not "relevantly similar" to earlier statutes allowing for execution and forfeiture. *See Bruen*, 142 S. Ct. at 2132.

*Range*, 69 F.4th at 105.

This Court agrees with the Third Circuit. The consequences imposed by these laws, though severe, "do[ ] not suggest that the particular (and distinct) punishment at issue – lifetime disarmament –is rooted in our Nation's history and tradition." *Range*, 69 F.4th at 105.

In sum, Defendant Brunner is included in "the people" protected by the Second Amendment. Because none of the historical laws offered by the Government impose a "comparable burden" on the Second Amendment right of convicted felons to keep and bear arms, the Court finds § 922(g)(1) unconstitutional, facially and as applied.

This Court is well aware of the gun violence epidemic in our community, district, and country at large, and the risks posed by allowing potentially dangerous individuals to be armed. That said, it is persuaded that adherence to the *Bruen* directive, that a proper historical analogue must be both comparably justified and impose a comparative burden, compels its conclusion.

## Conclusion

For the foregoing reasons, Defendant Germonde Brunner's Motion to Dismiss the Indictment (Doc. 27) is **GRANTED**. All other pending motions are **TERMINATED as MOOT** and pending hearings and proceedings set by the Court are **VACATED**.

**IT IS SO ORDERED.**

**DATED: April 2, 2024**

*[signature]*

**STACI M. YANDLE**
**United States District Judge**